Andrew GROSS, Appellant,

v.

Paul HUBBARD, Appellee.

Court of Appeals of Kentucky.

June 20, 1958.

Robert J. Watson, Middlesboro, for appellant.

Farmer Helton, Pineville, for appellee.

MILLIKEN, Judge.

Paul Hubbard got a judgment for $8,000 against Andrew Gross in an automobile negligence action, and Gross has appealed.

On August 5, 1956, at about 4:30 p. m. on a clear, sunny day, Hubbard, who was the plaintiff below, drove from his mother's home on "old" U. S. 119 to a point in Bell County where that road intersects "new" U. S. 119 at an acute angle. He stopped, looked both ways, said he saw nothing, and proceeded across new 119. He could see about 500 feet in both directions. When he neared the center of new 119 he said his car stalled, and he had been trying to start it for an estimated twenty or thirty seconds before it was hit by Gross' automobile.

On the other hand, Gross stated that he was driving on new U. S. 119 from Harlan toward Pineville at about 45 miles per hour with his wife in the front seat and other passengers in the back seat. As he neared the intersection of new U. S. 119 and old U. S. 119, he saw Hubbard's car approach the intersection. When Gross reached a point about 200 feet from the intersection Hubbard stopped. Gross maintained his speed to within about 50 feet of the intersection when, he said, Hubbard's car suddenly shot out of old U. S. 119 heading straight across new U. S. 119. Gross slammed on his brakes and rode them until his car struck Hubbard's car in the side. He estimated that his car would have been visible for 1,200 feet approaching the intersection had Hubbard really looked for it.

Several other witnesses testified in the trial of the case, all for the defendant, Andrew Gross, except for the medical testimony of a doctor. The first of these was his wife, Inez Gross, who was riding with her husband when the collision took place. Her testimony is substantially the same as her husband's, and she also testified that she saw a car approaching from the other direction on U. S. 119 just before the collision occurred.

James B. Bryant, the third witness for Gross, testified that he did not know Gross, but that he—the witness—was driving on new U. S. 119 toward Harlan, the opposite direction in which Gross was traveling, and was about 200 feet from the intersection of old and new U. S. 119 when the collision occurred. He testified that Hubbard's car shot out of old U. S. 119 directly into the path of Gross's car, that he quickly braked his own car, and that he was not over 200 feet away when the cars of Gross and Hubbard collided. His testimony thus corroborated the testimony of the defendant, Gross.

The state trooper who investigated the wreck testified concerning stopping time at various speeds, and that Gross' car left "faint" skid marks for 70 feet to the point of collision.

We think the conflicting evidence of the parties clearly presented questions for a jury to decide. KRS 189.330 (4) imposed a duty on Hubbard to yield the right of way to traffic on the through way, U. S. 119, "which was approaching so close-

ly on the highway as to constitute an immediate hazard * * *." Both Gross and Hubbard declared that Hubbard stopped at the intersection, but Hubbard testified he looked and saw no car approaching on the highway from his right, that he proceeded out onto the main highway, his car stalled momentarily, then was struck by the car of Gross. On the other hand, Gross admitted seeing Hubbard stop at the intersection, but said Hubbard shot out in front of him so suddenly he could not avoid hitting him.

The asserted stalling of Hubbard's car in the intersection involves a time factor which distinguishes this case from Vaughn v. Jones, Ky., 257 S.W.2d 583, where Jones entered a main highway from a side road after stopping his car at the intersection, looking and failing to see Vaughn's approaching car. In that case we concluded that Jones should have seen Vaughn's car approaching. But in the case at bar, Hubbard said his car stalled after getting out onto the main road—after Hubbard said he looked and saw no car approaching on U. S. 119.

The instructions given by the court required Gross to have his car under control, to keep a lookout ahead, and not to exceed the speed limit of sixty miles an hour. The next instruction required Hubbard to yield the right of way to cars which were so closely approaching the intersection as to constitute an immediate hazard to anyone crossing the intersection from the side road. The third instruction was a last clear chance instruction.

The instructions as given placed in issue the speed of Gross' car and whether he was keeping a lookout ahead, when in fact these points were not at issue. Hubbard said he did not see Gross' approaching car and Gross said he was going about forty-five miles an hour and saw Hubbard stop at the intersection. Such instructions called the jury's attention to possible violations of duty by Gross for which no evidence whatever was introduced.

The controlling issue in the case was whether Hubbard's car was stalled in the intersection long enough for Gross, proceeding lawfully as he was, to have had time and opportunity to avoid the collision. The instructions should have directed the jury to determine whether Hubbard's car actually was stalled in the intersection, and, if so, whether it was stalled long enough to have afforded Gross time and opportunity, considering traffic conditions, to have avoided the collision. The instruction given on last clear chance did not clearly state these factors.

We do not consider it necessary to discuss other points raised.

The judgment is set aside for proceedings in conformity herewith.